UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| ADRON LITTLMANE FLOYD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-cv-478 |
| | ) | |
| v. | ) | Honorable Gordon J. Quist |
| | ) | |
| J. FERGUSON et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* and Plaintiff shall pay the initial partial filing fee when funds are available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Parole Board and Patricia Caruso. The Court, however, will serve Plaintiff's surviving Eighth Amendment claim against Defendants J. Ferguson, K. Wood,

(Unknown) Greenfield, B. Wolever, Daniel Stine, Brian Chaffee, (Unknown) Sanchez, Anne Maroulis, Betty Kemp, and D. Watkins.

## Discussion

    I.        Factual Allegations

Plaintiff is incarcerated in the Ionia Maximum Correctional Facility (ICF). In his *pro se* complaint, Plaintiff sues the following ICF employees: Corrections Officers J. Ferguson, K. Wood, (Unknown) Greenfield, B. Wolever, Daniel Stine, Brian Chaffee, and D. Watkins; Captain (Unknown) Sanchez; and Registered Nurses Anne Maroulis and Betty Kemp. Plaintiff also sues Patricia Caruso, Director of the Michigan Department of Corrections, and the Michigan Parole Board.

On January 25, 2007, the Michigan Department of Corrections (MDOC) transferred Plaintiff to ICF. The next day, Defendants Ferguson and Wood placed Plaintiff in full restraints to walk him through the intake process. While walking, Plaintiff alleges that Defendant Ferguson kept bumping Plaintiff with his chest; so Plaintiff threatened "you would not like for me to put my head upside yours[,] would you?" (Compl. at 5; docket #1) (emphasis in original.) Defendant Ferguson immediately pushed Plaintiff's face into a door, pulled his restraints upward so that "a chunk of meat [] c[a]me out [of his] leg," and rushed Plaintiff back to his cell. (*Id.*) He threw Plaintiff in his cell, but Plaintiff caught his balance and "hulked as if [he] was go[ing to] spit." (*Id*) (emphasis in original.) At this time, Defendant Ferguson attempted to kick the cell door shut; however, Plaintiff blocked the door, and "fake[d]" that he would spit at anyone who came in his way. (*Id.* at 6.) Defendant Wolever then grabbed a shield and ran full speed into Plaintiff, knocking him over his bed rail. Defendants Chaffee, Wood, Stine and Ferguson subsequently rushed into Plaintiff's cell

and began to "punch," "stomp," and "kick" Plaintiff's head, neck and legs. (*Id.* at 7.) Plaintiff alleges that Defendants left him injured in full restraints from 9:18 a.m. until 10:00 p.m. (*Id.* at 8.) While several ICF employees checked on Plaintiff during the day, no one removed his restraints.[1] At one point, Defendants Watkins and Stine asked Plaintiff whether he wanted out of the restraints and Plaintiff spit on his window. (*Id.* at 9.) When the restraints were eventually removed, Plaintiff's hands "look[ed] like boxing gloves" because they were so swollen, skin was missing from Plaintiff's face and leg, and he had several "knots" on his head. (*Id.* at 10.) Plaintiff states that he now suffers from severe headaches and has permanent scars on his hands. (*Id.* at 10, 20.) As a result, Plaintiff alleges that Defendants violated his Eighth Amendment rights.

Besides his Eighth Amendment claim, Plaintiff asserts the following constitutional claims. First, Plaintiff argues that Defendant Watkins falsified a misconduct ticket for the above incident. Second, Plaintiff alleges that Defendant Caruso violated his substantive due process and equal protection rights because "the major [misconduct] tickets . . . used by the Parole Board to deny prisoners['] parole, [] are overbroad and [] minor offenses," and impact Plaintiff by increasing his security level and denying his parole. (*Id.* at 15-17) (emphasis in original.) Third, Plaintiff complains that Defendants Ferguson, Stine, Chaffee, Wood, Wolever, Sanchez, Greenfield, Maroulis, Kemp and Watkins conspired against Plaintiff by refusing to remove his restraints and treat his injuries. Fourth, Plaintiff alleges that Defendant Michigan Parole Board violated Plaintiff's due process rights by failing to hold a parole hearing prior to denying Plaintiff's parole for twenty-four months.

Plaintiff seeks injunctive relief and compensatory and punitive damages.

---

[1] It is unknown whether any Defendants administered any medical care to Plaintiff on January 26, 2007.

## II.    Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    **Misconduct Ticket**

Plaintiff claims that he was falsely convicted of a major misconduct.[2] The Supreme Court has held that claims for declaratory relief and monetary damages, which necessarily imply the invalidity of the punishment imposed, are not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).

---

[2]To the extent Plaintiff alleges that the MDOC classifications of major misconduct offenses are overbroad and violate his substantive due process and equal protection rights, those claims fail to state a claim as set forth herein.

As the Supreme Court has recently stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges). *See also Muhammad v. Close*, 540 U.S. 749, 754-55 (2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated).

In *Muhammad*, 540 U.S. at 754-55, the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *Johnson v. Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004). In other words, *Edwards* still applies where a plaintiff has lost good-time credits as the result of the misconduct conviction. Under Michigan law, a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated good-time credits in cases. *Id.* Plaintiff does not assert that he did not forfeit good-time credits for the month of his misconduct conviction. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, 102 F. App'x 900, 901 (6th Cir. 2004).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Major Misconduct Hearing Report is received. MICH. COMP. LAWS § 791.254; MICH. DEP'T OF CORR., Policy Directive 03.03.105, ¶ DDD (effective Jan. 1, 2007). Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2). If he is not successful, then he may then seek to overturn the convictions by bringing a federal habeas corpus action.[3] Accordingly, because Plaintiff has not shown that his conviction has been invalidated, his claim is not presently cognizable. Therefore, Plaintiff fails to state a claim on which relief can be granted for his misconduct claim. *See Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) (same); *Harris v. Truesdell*, 79 F. App'x 756, 758-59 (6th Cir. 2003) (same).

B.  **Michigan Parole Board - Procedural Due Process**

Plaintiff also challenges the Michigan Parole Board's failure to hold a parole hearing prior to denying Plaintiff's parole for twenty-four months. In *Wilkinson*, 544 U.S. at 82, the United States Supreme Court clarified that §1983 remains available to a state prisoner for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner. *See also Thomas v. Eby,* 481 F.3d 434, 439-40 (6th Cir. 2007) (a plaintiff's challenge to parole procedures may proceed under § 1983 because it does not automatically imply a shorter

---

[3]A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). A challenge to a "shortened" prison sentence is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *Preiser*, 411 U.S. at 487-88. However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

sentence). As to his parole denial, Plaintiff does not seek release from prison; rather, he requests a parole hearing. As a consequence, under *Wilkinson*, success in this action would not necessarily demonstrate the invalidity of Plaintiff's continued confinement, so his action does not appear to be *Heck*-barred. *See Wilkinson*, 544 U.S. at 82. Plaintiff's action therefore is cognizable under § 1983.

Plaintiff alleges that the Michigan Parole Board[4] violated his due process rights because he did not receive a parole hearing. To sustain such a claim, Plaintiff must first establish that eligibility for parole is a recognized liberty interest, entitled to protection by the Due Process Clause. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Bd. of Pardons v. Allen*, 482 U.S. 369, 381 (1987). A prisoner's unilateral expectation, particularly where prison officials retain complete discretion regarding an ultimate determination, does not create a constitutionally protected entitlement or liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Liberty interests may arise from the Constitution itself or from the provisions of state law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). A prisoner has no constitutional or inherent right to be released on parole before the expiration of the prisoner's sentence. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The state is therefore free to institute parole systems, but it has no duty to do so. *Id.*; *see Rose v. Haskins*, 388 F.2d 91, 93 (6th Cir. 1968).

---

[4]The Michigan Parole Board is immune from injunctive and monetary relief. The Michigan Parole Board is a part of the Michigan Department of Corrections. MICH. COMP. LAWS § 791.231a(1). Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, if the state has not waived immunity and Congress has not expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 340-41 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Therefore, the Michigan Parole Board, as part of the Michigan Department of Corrections, is immune from injunctive and monetary relief. *See Fleming v. Martin*, 24 F. App'x 258, 259 (6th Cir. 2001) (Michigan Parole Board entitled to Eleventh Amendment immunity); *Carson v. Mich. Parole Bd.*, No. 88-1277, 1988 WL 79688, at *1 (6th Cir. July 27, 1988) (same).

A prisoner has a liberty interest in the possibility of parole if, but only if, state law creates a legitimate expectation of parole release by the use of mandatory language limiting the discretion of the parole board. *See Bd. of Pardons*, 482 U.S. at 373-75. In the absence of a state-created liberty interest, a parole board can deny release on parole for any reason or no reason at all, and the Due Process Clause has no application. *See Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235-36 (6th Cir. 1991).

In numerous cases, this Court has reviewed Michigan law and has found a complete absence of mandatory language or the imposition of substantive predicates restricting the Michigan Parole Board's discretion. Michigan statutes merely define those prisoners not eligible for parole and list factors that the Michigan Parole Board may or may not consider in its decision to grant or deny parole, without directing a specific result. *See* MICH. COMP. LAWS §§ 791.233b, .234, .235. No statutory provision requires parole for any eligible prisoner under any circumstances. The statute makes release on parole expressly discretionary. MICH. COMP. LAWS § 791.234(11).[5]

Relying upon these provisions of Michigan law, the Sixth Circuit Court of Appeals has authoritatively held that the Michigan system does not create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc). In unpublished decisions following *Sweeton*, the Sixth Circuit has repeatedly held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec.

---

[5]The Michigan parole statutes have been amended several times in recent years. The statutory citations contained above are to the present codification of the parole law. None of the recent amendments are material to the issues now before the Court. Release on parole has always been discretionary under Michigan law.

11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Further, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. In the absence of a liberty interest, even an allegation of arbitrary or capricious denial of release on parole states no federal claim. *See Haynes*, 1990 WL 41025, at *1. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to hold a parole hearing for Plaintiff, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

C. **Michigan Parole Board - Substantive Due Process**

Construing his *pro se* complaint liberally, *see Haines*, 404 U.S. at 520, Plaintiff appears to allege that he has been denied substantive due process by the arbitrary actions of Defendant in refusing to follow state law. Plaintiff's substantive due process claim is without merit. Substantive due process "prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty, . . . ." *United States v. Salerno,* 481 U.S. 739, 746 (1987) (internal quotation marks and citations omitted). Although substantive due process protects inmates from arbitrary denials of parole based on impermissible criteria such as race, religion, or political beliefs, or frivolous factors, such as eye color, even where a prisoner may not

have a protected liberty interest, *see Block v. Potter*, 631 F.2d 233, 236 n.2 (3d Cir. 1980), Plaintiff does not present any such allegations here. *See Mayrides v. Chaudhry*, 43 F. App'x 743, 746 (6th Cir. 2002) (considering substantive due process claim in context of parole). Moreover, it cannot be said that the actions of the parole board in continuing to deny Plaintiff's release on parole either shock the conscience or interfere with rights implicit in the concept of ordered liberty. Plaintiff is serving a sentence for possession with intent to deliver less than fifty grams of a controlled substance, MICH. COMP. LAWS § 333.7401(2)(a)(iv), and possession of less than twenty-five grams of cocaine, MICH. COMP. LAWS § 333.7403(2)(a)(v).[6] In light of Plaintiff's criminal history, the Michigan Parole Board's decision cannot reasonably be considered to either shock the conscience or interfere with rights implicit in the concept of ordered liberty. Consequently, Plaintiff has failed to assert a substantive due process claim.

### D. **Defendant Patricia Caruso**

Plaintiff alleges that Defendant Patricia Caruso violated his substantive due process and equal protection rights because "the major tickets . . . used by the Parole Board to deny prisoners parole, [] are overbroad and [] minor offenses," and impact Plaintiff by increasing his security level and denying his parole. (*Id.* at 15-17.) Plaintiff first argues that the MDOC's classifications for major misconduct offenses are both overbroad and void-for-vagueness. Overbreadth is a standing doctrine that allows a person to challenge a regulation as an infringement on the exercise of his First Amendment rights even where the regulation may be validly applied to that person. *Bailey v. Carter,*

---

[6]The Court retrieved information regarding Plaintiff's previous convictions from the MDOC Offender Tracking Information System, available at http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=286445.

15 F. App'x 245, 252 (6th Cir. 2001) (citing *Broadrick v. Oklahoma,* 413 U.S. 601, 611-12 (1973)). Because Plaintiff does not allege that any of the major misconduct classifications regulate constitutionally protected speech or association, the overbreadth doctrine is inapplicable. "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357 (1983) (citations omitted); *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trustees,* 411 F.3d 777, 798 (6th Cir. 2005). Ordinary people are perfectly capable of understanding the breadth and extent of the major misconduct violations at issue. Plaintiff's arguments therefore fail to state a claim.

Plaintiff's substantive due process and equal protection claims also fail against Defendant Caruso. As stated above, substantive due process "prevents the government from engaging in conduct that shocks the conscience, . . . or interferes with rights implicit in the concept of ordered liberty, . . . ." *Salerno,* 481 U.S. at 746. Plaintiff's allegations in this case fail to meet this formidable standard, and, thus, he fails to state a claim that his substantive due process rights were violated.

Plaintiff also claims that the MDOC major misconduct classifications violate the Equal Protection Clause but provides no specific factual allegations to support his conclusion. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff's allegations on this point are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996);

*Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000).

Plaintiff finally argues that the major misconduct classifications impact him by denying his parole and increasing his security level.  As previously stated, Plaintiff has no liberty interest in parole.  Plaintiff also has no constitutional right to any particular security classification. The Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486 (1995).  In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation.  The court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life.  *Id; see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).  Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself."  *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).  The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges.  *See, e.g.*, *Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2

(6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Because Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim.

      E.    **State Law**

Plaintiff argues that Defendants engaged in a conspiracy. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton*, 27 F.3d at 1166. To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998). Therefore, I recommend that Plaintiff's state law claims be dismissed without prejudice.

      F.    **Eighth Amendment Claim**

Upon initial review, the Court concludes that Plaintiff's Eighth Amendment claim against Defendants J. Ferguson, K. Wood, (Unknown) Greenfield, B. Wolever, Daniel Stine, Brian Chaffee, (Unknown) Sanchez, Anne Maroulis, Betty Kemp, and D. Watkins is not subject to dismissal under 28 U.S.C. § 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) against Defendants Michigan Parole Board and Patricia Caruso.  The Court, however, will serve Plaintiff's surviving Eighth Amendment claim against Defendants J. Ferguson, K. Wood, (Unknown) Greenfield, B. Wolever, Daniel Stine, Brian Chaffee, (Unknown) Sanchez, Anne Maroulis, Betty Kemp, and D. Watkins.

An Order consistent with this Opinion will be entered.


Dated:  August 8, 2007                                      /s/ Gordon J. Quist
                                                            GORDON J. QUIST
                                                            UNITED STATES DISTRICT JUDGE