UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRON LITTLMANE FLOYD #286445,

    Plaintiff,

v.                                                           Case No. 1:07-cv-478
                                                            HON. JANET T. NEFF

J. FERGUSON, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

       Plaintiff Adron Littlmane Floyd #286445, an inmate currently confined at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer J. Ferguson, Corrections Officer K. Wood, Corrections Officer Unknown Greenfield, Corrections Officer B. Wolever, Corrections Officer Daniel Stine, Corrections Officer Brian Chaffee, Captain Unknown Sanchez, Anne Maroulis, R.N., Betty Kemp, R.N., the Michigan Parole Board, MDOC Director Patricia Caruso, and Corrections Officer D. Watkins.

       Plaintiff's complaint alleges that on January 25, 2007, the Michigan Department of Corrections (MDOC) transferred Plaintiff to ICF. The next day, Defendants Ferguson and Wood placed Plaintiff in full restraints to walk him through the intake process. While walking, Plaintiff alleges that Defendant Ferguson kept bumping Plaintiff with his chest. Plaintiff threatened "you would <u>not</u> like for me to put my head upside yours[,] would you?" (Compl. at 5; docket #1) (emphasis in original.) Defendant Ferguson immediately pushed Plaintiff's face into a door, pulled

his restraints upward so that "a chunk of meat [] c[a]me out [of his] leg," and rushed Plaintiff back to his cell. (*Id.*) Defendant threw Plaintiff in his cell, but Plaintiff caught his balance and "<u>hulked</u> as if [he] was go[ing to] spit." (*Id.*) (emphasis in original.) At this time, Defendant Ferguson attempted to kick the cell door shut. However, Plaintiff blocked the door, and "fake[d]" that he would spit at anyone who came in his way. (*Id.* at 6.) Defendant Wolever then grabbed a shield and ran full speed into Plaintiff, knocking him over his bed rail. Defendants Chaffee, Wood, Stine and Ferguson subsequently rushed into Plaintiff's cell and began to "punch," "stomp," and "kick" Plaintiff's head, neck and legs. (*Id.* at 7.) Plaintiff alleges that Defendants left him injured in full restraints from 9:18 a.m. until 10:00 p.m. (*Id.* at 8.) While several ICF employees checked on Plaintiff during the day, no one removed his restraints.[1] At one point, Defendants Watkins and Stine asked Plaintiff whether he wanted out of the restraints and Plaintiff spit on his window. (*Id.* at 9.) When the restraints were eventually removed, Plaintiff's hands "look[ed] like boxing gloves" because they were so swollen, skin was missing from Plaintiff's face and leg, and he had several "knots" on his head. (*Id.* at 10.) Plaintiff states that he now suffers from severe headaches and has permanent scars on his hands. (*Id.* at 10, 20.) As a result, Plaintiff alleges that Defendants violated his Eighth Amendment rights.

In addition to his Eighth Amendment claim, Plaintiff asserts the following constitutional claims. First, Plaintiff argues that Defendant Watkins falsified a misconduct ticket for the above incident. Second, Plaintiff alleges that Defendant Caruso violated his substantive due process and equal protection rights because "the major [misconduct] tickets . . . used by the <u>Parole Board </u>to deny prisoners['] parole, [] are overbroad and [] minor offenses," and impact Plaintiff by

---

[1] It is unknown whether any Defendants administered any medical care to Plaintiff on January 26, 2007.

increasing his security level and denying his parole. (*Id.* at 15-17) (emphasis in original.)  Third, Plaintiff complains that Defendants Ferguson, Stine, Chaffee, Wood, Wolever, Sanchez, Greenfield, Maroulis, Kemp and Watkins conspired against Plaintiff by refusing to remove his restraints and treat his injuries.  Fourth, Plaintiff alleges that Defendant Michigan Parole Board violated Plaintiff's due process rights by failing to hold a parole hearing prior to denying Plaintiff's parole for 24 months.  Plaintiff is seeking compensatory and punitive damages, as well as injunctive relief.

On August 8, 2007, the court issued an opinion and order dismissing Defendants Caruso and the Michigan Parole Board from this action.  Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56.  Plaintiff has filed a response and the matter is ready for decision.  Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing*

- 3 -

*Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants state that they are entitled to summary judgment on Plaintiff's Eighth Amendment claims because any force used by Defendants in placing Plaintiff back into his cell was necessary and that Plaintiff refused to allow them to remove his restraints.  The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958).  The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain."  *Rhodes*, 452 U.S. at 346.  Among unnecessary and wanton infliction of pain are those that are "totally without penological justification."  *Id.*

Plaintiff's claim involving the use of restraints must be analyzed under the Supreme Court authority limiting the use of force against prisoners.  This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings.  *See, e.g.*, *Whitley*, 475 U.S. at 321-22.

Generally, restrictions and even harsh conditions of confinement are not necessarily cruel and unusual punishment prohibited by the Eighth Amendment. *Rhodes*, 452 U.S. 347. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990). Physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

Plaintiff admits that he was blocking his cell door from closing and that he was assaulting the officers by pretending to spit on them. The officers used a Plexiglass shield to force Plaintiff from the doorway into his cell. Once in the cell, Plaintiff was placed on the ground using the shield and the officers backed out of the cell. Defendants deny that Plaintiff was beaten and state that there is no medical documentation of injuries arising from an assault such as that described by Plaintiff in his complaint. In addition, Defendants state that Plaintiff refused to give up the restraints, despite repeated attempts by Defendants to retrieve them. Plaintiff also refused to allow himself to be examined by the nurse.

Defendants attach a copy of the January 26, 2007, misconduct reports, as well as the related hearing reports to the brief in support of the motion for summary judgment. (*See* Defendants' Exhibit A.) In the "reason for finding" section of the February 13, 2007, hearing report the hearing officer stated:

> Hearing officer finds based on the statements of officers Ferguson and Wood that prisoner stated to reporter "Bitch I'm going to smash your face with my head." Hearing officer finds the words were directed at the officer and expressed an intent to injure or physically abuse. Charge sustained. Hearing officer finds reporter credible based on the statement of officer Wood. Hearing officer also finds based on the statements of officers Ferguson and Wood that prisoner then began to twist and turn and bumped reporter with his shoulder. Hearing officer finds prisoners [sic] action were [sic] an intentional non-consensual touching of the officer with intent to physically abuse and charge is sustained. Hearing officer finds reporter credible based on the statement of officer Wood. Hearing officer also finds based on the statement of officer Wood that prisoner kicked him in the left hand. Hearing officer finds prisoners [sic] action was an intentional non-consensual touching of the officer with intent to injure. Charge sustained. Hearing officer also finds based on the statement of officer Chaffee that prisoner was trying to spit on the staff, he was put on the floor and was twisting and turning causing the officers [sic] wrist to be caught and cut. Hearing officer finds prisoners [sic] action was an intentional physical resistance to the staff which resulted in an injury to the officer and charge is sustained. Hearing officer finds a review of the recording is inconclusive other than to show the escort and the rest occurred in prisoners [sic] cell which is not shown by the recording. Hearing officer also finds that photographs by [Sergeant] Pierce are allegedly of injuries to prisoner during or after the fact and are not relevant to the charge of any issue before the hearing officer.

(*See* Defendants' Exhibit A, p. 1)

The report for the hearing on the misconduct ticket written by Defendant Wood, which was held on February 9, 2007, indicates that Plaintiff was present during the hearing and admitted telling Defendant Wood that he was going to stab him on January 26, 2007, and pleaded guilty to that charge of threatening behavior. (*See* Defendants' Exhibit A, p. 5.) In the report for the

hearing on the misconduct written by Defendant Watkins, the hearing officer found that Plaintiff was given an order to back up to the cell door so his cuffs could be removed, but that Plaintiff refused, telling Defendants Watkins and Stine to "fuck off." The hearing officer also found that Plaintiff had spit towards Defendants Watkins and Stine, hitting the window in his cell door. Plaintiff was found guilty of threatening behavior and disobeying a direct order (*See* Exhibit A, p. 7.)

During the hearing on the threatening behavior misconduct ticket written by Defendant Greenfield on January 26, 2007, the hearing officer found that Plaintiff had threatened to beat Defendant Greenfield's "ass" as soon as the restraints were removed, and had called him a "bitch." (*See* Defendants' Exhibit A, p. 9.) During the hearing on the disobeying a direct order misconduct ticket written by Defendant Greenfield, the hearing officer found that Plaintiff stated "get the fuck away from the door white boy" when Defendant Greenfield told him to back up to the cell door to have his restraints removed. (*See* Defendants' Exhibit A, p. 11.) In addition, Plaintiff was found guilty of urinating on his cell floor and refusing to remove paper from his cell window on January 26, 2007. (*See* Defendants' Exhibit A, pp. 13, 19.) Plaintiff was also found guilty of refusing to remove his arm from the food slot and throwing his food tray on the floor on January 27, 2007. (*See* Defendants' Exhibit A, pp. 15, 17.)

Defendants also attach a copy of the critical incident report dated January 26, 2007, which describes the incident as follows:

> On 01/26/2007 at 0917 hours, while in the A-Wing dayroom for a health care callout, prisoner Floyd, Adron, #286445, 78-2, became verbally abusive and threatening towards staff. Prisoner Floyd's health care callout was terminated. [Resident Unit Officer] J. Ferguson and [Corrections Officer] K. Wood began to escort prisoner Floyd back to his cell. During the escort prisoner Floyd attempted to spit on [Resident Unit Officer] Ferguson and [Corrections Officer] Wood. Prisoner Floyd then placed his back against the cell door, preventing it from closing. Additional assistance was called for.

> [Resident Unit Officer] B. Wolever and [Corrections Officer] B. Chaffee responded. [Resident Unit Officer] Wolever gave prisoner Floyd several loud verbal commands to enter the cell. [Resident Unit Officer] D. Stine arrived with the shield, which [Resident Unit Officer] Wolever took to prevent himself from being spat on. Prisoner Floyd then began to headbutt and knee the shield. [Resident Unit Officer] Wolever pushed prisoner Floyd into the cell with the shield, followed by [Corrections Officers] Chaffee, Wood and [Resident Unit Officer] Ferguson. Prisoner Floyd continued to resist staff by hitting, kicking and headbutting. [Resident Unit Officers] Wolever, Ferguson and [Corrections Officer] Chaffee then placed prisoner Floyd face down on the cell floor to gain control and allow staff the opportunity to safely exit the cell. All staff then exited the cell and the cell door was secured without further incident. Prisoner Floyd refused to come to the cell door to be removed from restraints. At 0937 hours, [R.N.] A. Maroulis attempted to evaluate prisoner Floyd. Prisoner Floyd refused to be evaluated and [R.N.] Maroulis noted no injuries. All staff involved in the incident utilized universal precautions. Due to the spontaneity of the incident no hand held video recording was made, however a request has been submitted to Inspector B. Goodson to download the video from the facility digital video recording system. At 1055 hours, [Corrections Officer] Chaffee was conveyed to ICMH by staff for evaluation and treatment for injuries received during the incident.

(*See* Exhibit B, pp. 1-3.)

Finally, Defendants offer a copy of Plaintiff's medical record for the pertinent time period. In the January 27, 2007 progress note by Defendant Kemp, she recorded:

> Gave [Plaintiff] Cleocin and Doxycycline at cell door. [Plaintiff] stated he wanted to go to the hospital because his neck was hurting. He also complained he had scrapes on his legs and his wrists hurt. No swelling. Unable to see if wrists were discolored due to lighting in cell. Has several scrabs [sic] on his chins [sic]. Offered prisoner Tylenol on next med round and he accepted. Instructed prisoner to apply warm compresses to his neck and wrists and rest. Kite if no improvement.

(*See* Defendants' Exhibit C, p. 7.)

In the subjective portion of the "SOAP" note summary dated January 28, 2007, Defendant Maroulis recorded:

> 0900 Noted on health care rounds to be lying on his stomach under his bed with only his head, shoulders & one leg partially out from under the bed. Fingers & toes noted to be normal color. Officers state that when they banged on the door he jumped but refused to get off the floor and come to the door. Spoke with custody staff & response team called.
>
> 0930 Speaking with officers and agreed to come out to health care area. 0935 "I keep Blacking out. I don't fake injuries. I've got hickies in my head. There is something wrong with my neck."

(*See* Defendants' Exhibit C, p. 8.) In the objective portion, Defendant Maroulis stated:

> 0930 Ambulated to health care area without difficulty. Holding his head up, walking gait steady. Skin warm, dry, color normal. BP 140/90 - pulse 88 resp 18 Temp 97.9. [Plaintiff] assessed by [Defendant] Kemp. Head checked no abnormalities noted. On assessment of scalp by [Defendant] Kemp [Plaintiff] stated thats [sic] not by head thats [sic] a knot. No knots felt on head during assessment. [Pupils equal round and reactive to light.] Small bruise noted outside of rt. eye. Instructed to bend head from side to side & front to back. [Plaintiff] uncooperative and would only do partial range with nurse assistance. [Complained of] pain on palpation to the back of his neck. No redness, bruising or swelling noted. Continues to be uncooperative with assessment and angry. Hand grips equal. Ambulated back to cell without difficulty.

(*See* Defendants' Exhibit C, p. 8) Defendant Maroulis instructed Plaintiff to place warm compresses to the back of his neck as tolerated, to take Tylenol every four to six hours as needed, and to avoid exercising. Plaintiff was referred to the medical service provider for his neck discomfort. (*See* Defendants' Exhibit C, p. 8)

Psychologist Kirt R. Dozeman, M.A., met with Plaintiff on February 13, 2007, and made the following assessment:

> Controlling. Argumentative. Attempts to get this clinician to engage in verbal antics over his legal pursuits. No evidence of MMD. Severe Antisocial Personality [Disorder] with psychopathic traits. Fully able to take care of his basic needs. Looking to displace blame over his recent troubles. Denies any suicidal ideation. Frustrated over his inability to control his environment.

- 9 -

(*See* Defendants' Exhibit C, p. 12.)

In the February 25, 2007, progress note, Defendant Kemp stated that she responded to Plaintiff's kite, in which Plaintiff complained of chest pain and asserted that he had blacked out for the third time since the alleged assault on January 26, 2007. Defendant Kemp spoke with Plaintiff at his cell door, at which time Plaintiff denied having any symptoms. Plaintiff was yelling loudly at other inmates and laughing and joking with staff. (*See* Defendants' Exhibit C, p. 13.) On Februay 26, 2007, R.N. JoAnn M. Bunting attempted to examine Plaintiff because he was complaining of blurred vision and pain in his temple area. However, Plaintiff became angry and left the clinic before he could be examined. (*See* Defendants' Exhibit C, pp. 15-16.) In addition, Plaintiff refused a health care callout, stating "Everything is straight today." (*See* Defendants' Exhibit C, p. 17.)

In response to Defendants' motion for summary judgment, Plaintiff attests that the allegations in his complaint are true and that Defendants are lying. Plaintiff states that there was no justification for leaving him in overly tight restraints from 9:18 a.m. until 10:00 p.m., and that this caused his hands to swell up and caused him severe pain in his hands. Plaintiff contends that his medical records have been falsified and that there are photographs of his injuries, but that he has been denied access to these photographs despite his repeated requests.

A thorough review of the record in this case supports Defendants' assertion that the force used on Plaintiff was the result of Plaintiff's behavior and was necessary to manage him safely. In addition, it is clear that Plaintiff remained in restraints as long as he did because he refused to cooperate with staff and allow the removal of the restraints. The medical record shows that Plaintiff did not suffer a serious injury as a result of the January 26, 2007, incident. As noted above, Plaintiff has failed to come forward with any additional evidence showing that Defendants violated his Eighth

Amendment rights. Therefore, the undersigned concludes that there is no genuine issue of material fact that Plaintiff was subjected to excessive force by the named Defendants on January 26, 2007.

Defendants Greenfield, Sanchez, Maroulis, Kemp and Watkins state that they are entitled to summary judgment because they were not involved in the underlying misconduct in this case. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must

- 11 -

show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff concedes that Defendant Kemp was not involved in the alleged misconduct. Therefore, Defendant Kemp is entitled to summary judgment on this basis. However, Plaintiff alleges in his complaint that Defendants Greenfield, Sanchez, Maroulis and Watkins were all involved in the refusal to remove the restraints. Therefore, they are not entitled to summary judgment for lack of personal involvement.

Finally, Defendants state that they are entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who

stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). Because there is no genuine issue of material fact that Defendants violated Plaintiff's Eighth Amendment rights in this case, they are entitled to qualified immunity.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, it is recommended that Defendants' Motion for Summary Judgment (docket #22) be granted and that this case be dismissed in its entirety. In addition, should the court adopt the report and recommendation in this case, Plaintiff's pending motion for order to have court papers notarized to verify Plaintiff's signature (docket #28) is properly denied as moot.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

                                               /s/ Timothy P. Greeley  
                                               TIMOTHY P. GREELEY  
                                               UNITED STATES MAGISTRATE JUDGE

Dated:   August 29, 2008